IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID E. HARBOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-73-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant David E. Harbour requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 15, 1965, and was fifty-five years old at the time of the administrative hearing (Tr. 41, 96). He completed high school, and has worked as a lineman and diesel mechanic (Tr. 24, 136). The claimant alleges that he has been unable to work since October 27, 2009, due to severe hip injury, severe pain all the time, left wrist and right arm pain, heart trouble, bicep and tricep surgery on right arm and left wrist, right leg numbness, weather-related arthritis, and difficulty standing (Tr. 135-136).

## Procedural History

On October 27, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ W. Thomas Bundy conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 12, 2011 (Tr. 12-26). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of

light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (Tr. 19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled under Rule 202.21 of the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 25).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly apply the Grids, (ii) failing to properly evaluate the medical source evidence provided by Dr. Anne May, and (iii) failing to perform a proper credibility analysis. The Court finds the claimant's first contention persuasive.

The ALJ found that the claimant had the severe impairment of degenerative disc disease of the lumbar and cervical spine, as well as the non-severe impairments of major depression, recurrent, severe, without psychotic features; and hypercholesterolemia (Tr. 17). The claimant was hurt at his job on November 3, 2008, injuring his right shoulder and neck, as well as his lumbar spine, both hips, and both knees (Tr. 282). Dr. May treated the claimant in the course of his worker's compensation claim. She prepared letters periodically from June 21, 2010 through June 1, 2011 indicating the nature of the claimant's injuries, and asserting that the claimant was 100% temporarily totally disabled as the result of his injuries (Tr. 282-290). An August 15, 2011 MRI of the claimant's cervical spine revealed broad based disc-osteophyte complex resulting in mild-to-moderate bilateral neural foraminal narrowing at the C3-4 level; broad based disc-osteophyte complex which abuts the anterior surface of the cervical cord but causes no significant cord compression, and moderate narrowing of the right neural foramen and

mild-to-moderate narrowing of the left neural foramen, at C4-5 level; as well as broad based disc-osteophyte complex which abuts the anterior surface of the cervical cord but causes no significant cord compression, and moderate-to-severe bilateral neural foraminal narrowing with possible compression of the exiting nerve roots (Tr. 273-274). An MRI of the lumbar spine from the same day revealed: (i) prominence of epidural fat from the L3-4 through the L5-S1 levels contributing to canal narrowing; (ii) at L3-4, mild facet arthropathy and small posterior osteophytes resulting in mild narrowing of the canal, as well as moderate narrowing of the right neural foramen and mild narrowing of the left neural foramen; (iii) at L4-5, broad based disc bulge, moderate facet arthropathy, and posterior osteophytes resulting in mild narrowing of the canal, as well as mild-to-moderate narrowing of the right neural foramen and moderate narrowing of the left neural foramen; and (iv) at L5-S1, broad based disc bulge with superimposed left paracentral and midline extrusion, moderate facet arthropathy, and posterior osteophytes, resulting in moderate narrowing of the canal, as well as moderate bilateral neuroforaminal narrowing with abutment but not obvious compression of the exiting L5 nerve root (Tr. 276).

Consultative examiner William Cooper, D.O., saw the claimant on February 19, 2010. He noted, *inter alia*, that the claimant had pain with range of motion testing of the right elbow, both hips, both wrists—especially the left, and both knees, as well as a limited range of motion of the left wrist (Tr. 232). Additionally, he noted that the claimant's cervical spine and lumbar-sacral spine were tender to palpation with full range of motion associated with pain. Straight leg raising tests were negative bilaterally (Tr.

232). He assessed the claimant with chronic right hip pain secondary to fracture; history of osteoarthritis of the hands, wrists, elbows, and knees; coronary artery disease status post myocardial infarction; hypercholesterolemia; hypertension; chronic right elbow pain secondary to bicep and tricep tendon injuries status post surgery; episodes of parathesias of the right lower extremity (Tr. 232-233). A state reviewing physician then found the claimant capable of light work with no additional limitations (Tr. 246-252).

At the most recent administrative hearing, the claimant testified that he has "major back problems" that cause him difficulty with performing household chores such as sweeping, in addition to managing his own personal care in the restroom (Tr. 46). He stated that during the course of a day he was on his feet approximately twenty-five to thirty minutes, and sitting about the same amount of time, and that he spends the rest of his days in bed (Tr. 47-48). The claimant's mother also testified briefly at the hearing, indicating that she agreed with his testimony (Tr. 48).

The ALJ summarized the claimant's hearing testimony and provided a thorough retelling of much of the medical evidence. He then found that the medical evidence did not support the claimant's allegations of severity and that his allegations of "adverse symptomatology [were] just not believable to the extent alleged" (Tr. 24). He also stated:

> The claimant may indeed experience some discomfort. The issue, however, is not whether the claimant has pain, but rather the degree of that pain and if, in conjunction with his impairments, it renders him disabled. The objective medical evidence in this case establishes that, contrary to the claimant's allegations of disabling pain, he has exhibited relatively mild symptoms. Severe pain will often result in certain observable manifestations such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, the use of assistive devices, prolonged bed rest, or adverse neurological signs. In the present case, no

such signs exist. The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in, at the very least, the full range of "light" work on a sustained basis.

(Tr. 24). The ALJ then found that the claimant was not disabled according to "the grids," Medical-Vocational Rule § 202.21 (Tr. 24).

"The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). "An ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of the grids is inappropriate when a claimant has a nonexertional impairment, unless the ALJ can support a finding that the nonexertional impairment is insignificant. *Id.* at 1490-91; 20 C.F.R., pt. 404, subpt. P, App. 2, § 200.00(e). If an ALJ cannot rely conclusively on "the grids," he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." Soc. Sec. Rul. 96-9p, 1996 WL 374185 at *5.

"Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1490-91*, citing Ray v. Bowen*, 865 F.2d

222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490, *citing Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987).

In this case, there was objective medical evidence that the claimant has the pain-inducing impairments of degenerative disc disease of the lumbar and cervical spine. The ALJ thus was required to consider his assertions of pain and the extent to which it was disabling. *See Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ found that the claimant's pain was not disabling but cited no other evidence for this conclusion aside from the boilerplate conclusion that although "[t]he claimant may indeed experience some discomfort," the record supported a finding that the claimant could perform light work. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Carpenter v. Astrue*, 537 F.3d 1264,

1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

The ALJ further failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, was available given his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. June 17, 1994) (per curiam) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. This would ordinarily require the opinion of a vocational expert, *see, e. g., id.* at *5, but the ALJ did not even consult a vocational expert at the administrative hearing.

Because the ALJ failed to properly account for the claimant's pain, the Commissioner's decision is reversed and the case is remanded to the ALJ for further analysis. Upon proper analysis, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

    **DATED** this 26th day of September, 2014.

                                                                     _____
                                                                       **STEVEN P. SHREDER**
                                                                       **UNITED STATES MAGISTRATE JUDGE**